NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHERINE KATZ and YUDENIA MESA,[1] *on behalf of themselves and others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> AVALONBAY COMMUNITIES, INC., *et al.,* <br><br> Defendants. | Civil Action No.: 15-2740 (JLL) <br><br> OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiffs' Motion for Class Certification. (ECF No. 103). Defendant AvalonBay Communities, Inc. ("Defendant") filed an Opposition, (ECF No. 104), and Plaintiffs have filed a reply, (ECF No. 105). The Court has read the submissions of the parties and considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants Plaintiffs' Motion.

## I.  BACKGROUND

This purported class action arises out of a January 2015 building fire that occurred in a dual-building residential complex known as the Avalon in Edgewater, New Jersey, owned and operated by Defendant, a real estate investment and development company. (ECF No. 78 ("SAC") ¶¶ 1–2, 14). The Avalon was composed of two adjacent four-story luxury apartment buildings—

---

[1] Former named Plaintiff Jacqueline Voronov settled her individual claims against Defendant on June 29, 2018, and Voronov's claims have been dismissed from this action. (*See* ECF No. 99). The Court has amended the case caption to reflect the new named Plaintiffs.

the Russell Building and the River Building (also referred to as the River Mews Building). (SAC ¶¶ 2, 19). On January 21, 2015, a fire swept through the Russell Building, growing large enough to be seen across the Hudson River from Manhattan. (SAC ¶¶ 1, 6). According to a Cause and Origin Report by investigators at the Bergen County Prosecutor's Office, maintenance workers employed by Defendant started the fire while soldering pipes with a blow torch inside a wall in a first-floor apartment bathroom in the Russell Building. (SAC ¶¶ 28–34). In the hours that followed, the fire grew so large that "[a]pproximately 500 firefighters and other emergency personnel" from over thirty neighboring areas were needed to extinguish it. (SAC ¶¶ 36–37). The fire destroyed the Russell Building, rendering it "uninhabitable" and permanently displacing all of its approximately 500 residents. (SAC ¶¶ 3, 20, 38). There were no human fatalities, but two residents were treated for minor injuries, and many Russell Building residents lost pets in the fire. (SAC ¶¶ 7, 48).

On December 6, 2016, Defendant settled with a class of residents and occupants of the Russell Building. *DeMarco v. AvalonBay Communities, Inc.*, No. 15-628 (D.N.J. filed Jan. 29, 2015) (the "*DeMarco* Action"), ECF No. 125-3 at 3. That class was defined as: "All residents and occupants of the Russell Building at Avalon at Edgewater as identified on the operative lease agreements as of January 21, 2015, whose property in a Russell Building apartment or storage unit was destroyed by The Fire." *DeMarco* Action, ECF No. 223 at 2. Defendants did not oppose certification of the Russell Building class for purposes of the settlement. (ECF No. 103-1 ("Cert. Br.") at 6); *see also DeMarco* Action, ECF No. 125-3 at 17. This Court granted final approval of the Russell Building class settlement on July 11, 2017. *DeMarco* Action, ECF No. 223 at 2. The AvalonBay fire is the subject of at least 22 additional individual lawsuits against Defendant. (ECF No. 104 ("Opp. Br.") at 10).

This action, brought on behalf of tenants and occupants of the adjacent River Building, had been consolidated with the *DeMarco* action but was severed when that action settled. (ECF No. 32; Cert. Br. at 6). Now, Plaintiffs Katherine Katz and Yudenia Mesa seek to proceed as a class against Defendant on behalf of River Building occupants. (*See* ECF No. 103 at 2; SAC ¶ 89). Although the fire did not cause as much structural damage to surrounding buildings as it did to the Russell Building, tenants and occupants of the River Building were nevertheless affected by the fire. Plaintiffs allege that they were "displaced from their homes for four days" following the fire, during which time they were "forced to pay for lodging, food, clothing, and other basic necessities[,] as they had little or no time to collect any possessions" before evacuating. (SAC ¶¶ 59–60). Plaintiffs further allege that a "pervasive odor," "water and smoke damage," as well as "an accumulation of soot," have "rendered the River Mews Building uninhabitable." (Cert. Br. at 6; SAC ¶¶ 62, 66). Defendant claims that it took steps to clean River Building apartments, eliminate odors, and "ensure that the premises were safe for its residents." (Opp. Br. at 9). Defendant further claims that it offered tenants certain "concessions and credits" to cover losses related to the four-day displacement. (Opp. Br. at 10).

Plaintiffs raise additional allegations concerning the decreased rental value of their apartments. River Building residents lost the use of certain luxury amenities located in the Russell Building that were damaged or destroyed in the fire. (SAC ¶¶ 81–82). Plaintiffs allege that Defendant consequently charges lower rent for new residents in the River Mews Building, but has not reduced Plaintiffs' rent to reflect the same decrease in rental value. (SAC ¶¶ 83–85). Defendants have allegedly "offered to allow Plaintiffs to cancel their lease[s] and move out," but Defendant has not offered to compensate Plaintiffs for any moving expenses or losses related to increased rent payments at more expensive alternative accommodations. (SAC ¶¶ 73, 76).

Plaintiffs are "faced with the unenviable choice [between:] a) moving out of the area altogether, b) moving into a similarly priced, but smaller residence in the area, or c) moving into a similarly sized, but significantly more expensive residence in the area." (SAC ¶ 74).

Plaintiffs therefore seek to recover for the following:

> [T]he loss of use or deprivation of property; reimbursement of any rent payments made for the time in which the Avalon was uninhabitable; reimbursement of any excess rent payments incurred by former River Mews tenants as a result of their displacement; recovery for any improvements made by any River Mews tenants; and other expenses incurred as a direct result of the [f]ire, including for food, clothing, housing, relocation, transportation, medicine, medical treatment, and such other items as are necessary to continue one's activities of daily living.

(SAC ¶ 10). Plaintiffs seek to certify claims for common law negligence, private nuisance, and breach of contract. (SAC ¶¶ 98–119; Cert. Br. at 22 n.5). Plaintiffs allege that Defendant is liable for the losses caused by the fire because, *inter alia*, Defendant used a lightweight wood known to be flammable in the construction of the Avalon buildings, (SAC ¶¶ 8, 41, 54, 103), Defendant failed to install adequate sprinklers in certain areas of the buildings, (SAC ¶¶ 9, 44), the Russell Building lacked adequate fire walls, fire dampers, and fire doors, (SAC ¶¶ 45–46), and the maintenance workers who started the fire did not promptly call 9-1-1, nor did any other employee of Defendant, (SAC ¶¶ 9, 23).

Plaintiffs Katherine Katz and Yudenia Mesa were residents of the River Building at the time of the fire, and both were forbidden from entering their homes for four days. (SAC ¶¶ 12–13). Plaintiff Katz alleges that she was "forced to move into another apartment in the [Edgewater] area of comparable size and quality, but with a rental price approximately $850 per month greater than" her rent in the River Building. (SAC ¶ 12). Plaintiff Mesa alleges that she lived in New York City for "approximately two and a half months" following the fire, after which she continued

to live in her home in the River Building for two additional years. (SAC ¶ 13). She alleges that, although Defendant "significantly reduced the rental rates for new residents at River Mews" following the fire, Defendant continued to increase Plaintiff Mesa's rent, such that she "paid much more for her apartment than a resident in a comparable apartment that moved in after the fire." (SAC ¶ 13). Plaintiff Mesa was ultimately forced to seek less expensive accommodations. (SAC ¶ 13).

Plaintiffs now seek to certify a class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) of tenants and occupants of the River Building, or, alternatively, one subclass of tenants and one subclass of occupants. (Cert. Br. at 14–15; *see also* SAC ¶ 89). Defendant opposes certification, arguing that Plaintiffs fail to meet the requirements of Rule 23 under any proposed class definition. (*See generally* Opp. Br.).

## II.    LEGAL STANDARD

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). To meet the prerequisites of Rule 23, Plaintiffs must establish both that the four requirements of Rule 23(a) have been met—numerosity, commonality, typicality, and adequacy—as well as that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. Fed. R. Civ. P. 23; *see also In re Hydrogen Peroxide*, 552 F.3d at 309 n.6. Plaintiffs must also establish that the class is ascertainable, since "[a]scertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). In analyzing whether the Rule 23

requirements have been met, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide*, 552 F.3d at 307. This is true even if the class certification inquiry overlaps with the merits of the causes of action. *Id.*

Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also In re Hydrogen Peroxide*, 552 F.3d at 310. "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out [at trial] in order to determine whether common or individual issues predominate in a given case." *In re Hydrogen Peroxide*, 552 F.3d at 311 (citations and quotations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)). Therefore, in addition to the four requirements of Rule 23(a), Plaintiffs in this case bear the burden of establishing that common issues of fact and law predominate and that a class action is a superior method of adjudication.


### III.    ANALYSIS

#### A.    Class Definitions and Subclasses

"When appropriate, a class may be divided into subclasses that are each treated as a class under" Rule 23. Fed. R. Civ. P. 23(c)(5). "'[A] district court hearing a class action has the discretion to divide the class into subclasses and certify each subclass separately,'" particularly

where the court finds that a proposed class includes divergent interests. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (quoting *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 202 (3d Cir. 2005)). "[T]he decision whether to certify a subclass requires a balancing of costs and benefits," including the prevention of conflicts of interests among class members, on the one hand, and creating an obstacle to settlement by enabling each subclass to hold out for a better deal, on the other hand. *Id.*

Plaintiffs propose one unified class definition encompassing both tenants and occupants of the River Building, and alternatively offer the Court the option of certifying two subclasses—one for tenants and one for occupants. (Cert. Br. at 14–15). Plaintiffs' Brief in Support of their Motion for Class Certification defines the proposed unified class as follows:

> All persons who were, as of January 21, 2015, tenants of any apartment in the River Building in the complex known as Avalon at Edgewater or were occupying any apartment in the River Building.

(Cert. Br. at 14). By way of comparison, the *DeMarco* class was defined as follows:

> All residents and occupants of the Russell Building at Avalon at Edgewater *as identified on the operative lease agreements* as of January 21, 2015, whose property in a Russell Building apartment or storage unit was destroyed by The Fire.

*DeMarco* Action, ECF No. 223 at 2 (emphasis added). Alternatively, Plaintiffs propose two subclasses, defined as follows:

> a) All persons who were, as of January 21, 2015, tenants of any apartment in the River Building in the complex known as Avalon at Edgewater, and
>
> b) All persons, who were as of January 21, 2015, occupying any apartment in the River Building under the rights of any tenant.

(Cert. Br. at 15). Plaintiffs explain that they propose these subclass definitions specifically for certification of their breach of contract claims. (ECF No. 105 at 7).

The availability of subclasses allows a district court "to prevent conflicts of interest in class representation" and requires "the careful balancing of costs and benefits" associated with subclasses. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 271). As discussed further *infra*, the Court finds that the inclusion of both tenants as well as occupants of the River Building in the class definition does not defeat the adequacy of representation requirement or any other element of Rule 23. Specifically, the Court determines that no fundamental conflict of interest exists between tenants and occupants such that Plaintiffs Katz and Mesa may not adequately represent the interests of the class as a whole. Were the Court to splinter the class into individual subclasses for tenants and occupants, it would risk "Balkaniz[ing]" the class and introducing "a huge obstacle to settlement." *Id.* (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 271). Furthermore, the Court has doubts that an occupants-only subclass would satisfy the Rule 23 elements—namely, the numerosity requirement. Therefore, the Court finds that the drawbacks of dividing the class into two subclasses outweigh the limited utility of subclasses here and declines to so divide the class.

Having determined that a global class of both tenants and occupants is appropriate, the Court further finds that adherence to the precision of the class definition in the *DeMarco* settlement addresses Defendant's additional objections and cures the class of certain defects that may have otherwise given the Court pause. Accordingly, the Court defines the class as follows:

> **All persons who were, as of January 21, 2015, tenants or occupants of any apartment in the River Building in the complex known as Avalon at Edgewater as identified on the operative lease agreements.**

This definition is both adequately comprehensive—encompassing both tenants and occupants— as well as sufficiently precise in terms of identifying the scope of occupants to be included in the class. In granting final approval over the *DeMarco* settlement, this Court concluded that the nearly

identical class definition "[met] the requirements of Rule 23." *DeMarco* Action, ECF No. 223 at 3. The Court therefore concludes that certification is most appropriate using this class definition, and will refer to this definition in analyzing the class's satisfaction of the Rule 23 requirements. *See In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, Nos. 05-1151, 05-2367, 2013 WL 396117, at *15 (D.N.J. Jan. 30, 2013) ("[C]ourts are permitted to limit or modify class definitions to provide the necessary precision.") (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)).

**B.    Ascertainability**

In order to satisfy the ascertainability requirement, a class must be "defined with reference to objective criteria," and there must be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). Plaintiffs need not identify all class members at the certification stage. *Id.* All that is required is that Plaintiffs show that class members "*can* be identified." *Id.* (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)). However, Plaintiffs "cannot merely provide assurances to the district court that [the class] will later meet Rule 23's requirements." *Id.* at 164 (citing *Carrera*, 727 F.3d at 306). Plaintiffs must instead have some evidentiary support that their method of ascertaining a class will be successful. *Id.*

Defendant argues that the group of individuals "occupying" the River Building is not ascertainable because all temporary occupants are not necessarily identified in lease agreements and Defendant otherwise "has no records" of them. (Opp. Br. at 14–16). Defendant further argues that determining the scope of the occupants' subgroup "would require an extensive factual

inquiry," and would inhibit "identification of the class in a way that is both reliable and administratively feasible." (Opp. Br. at 15–16).

"Ascertainability is closely tied to [the requirement] that plaintiffs provide a proper class definition." *Byrd*, 784 F.3d at 164. "There will always be some level of inquiry required to verify that a person is a member of a class." *Id.* at 170. In order to ascertain the identities of class members in this case, whether tenants or occupants, the Court will be able to consult Defendant's lease records. "Such a process of identification does not require a 'mini-trial,' nor does it amount to 'individualized fact-finding,' and indeed must be done in most successful class actions." *Id.* at 170–71 (quoting *Carrera*, 727 F.3d at 307). The Court is satisfied that the inclusion of the language "as identified on the operative lease agreements" sufficiently addresses Defendant's objections and renders these class members ascertainable in a "reliable and administratively feasible" way. *Id.* at 163.


C.    **Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While '[n]o minimum number of plaintiffs is required to maintain a suit as a class action,' [the Third Circuit] has said that 'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity] prong of Rule 23(a) has been met.'" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–50 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

Plaintiffs maintain that the proposed class is sufficiently numerous because "there are at least 150 units in the River [B]uilding" whose tenants and/or occupants, according to discovery obtained from Defendant, "have neither brought individual lawsuits nor settled their claims with

Defendant." (Cert Br. at 17). Indeed, Defendant acknowledges that, "[a]t the time of the fire, there were 165 occupied units in the River Mews Building," six of which have reached individual settlements with Defendant, leaving "159 apartment units at issue in this putative class action." (ECF No. 104-31 ¶ 7). This number well exceeds the minimum of 40 potential plaintiffs at which a class is presumptively numerous. Nevertheless, Defendant argues that joinder is practicable because "class members identified on the leases are readily identifiable, subject to service, notice, and confined to limited geographical areas." (Opp. Br. at 18). The Court disagrees. A class may proceed to certification even where most or all of the potential class members live within a limited geographical area. *See N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 255 F.R.D. 374, 382 (D.N.J. 2009) (finding that joinder of over 800 plaintiffs would be impracticable, "[e]ven if all of [them] live in Essex, Union or Southern Hudson County"), *vacated in part on other grounds*, 707 F. Supp. 2d 520 (D.N.J. 2010).

Furthermore, Defendant argues that, because a group of individual actions brought by River Building tenants related to the same fire were consolidated in one state court proceeding, joinder here must be practicable, thereby defeating class certification. (Opp. Br. at 18). Defendant refers to a group of subrogation actions brought by insurance carriers on behalf of several tenants. (*See* ECF Nos. 104-31 ¶ 18, 104-44). Those proceedings have little bearing the certification of a class of tenants and occupants asserting their own tort and contract claims against Defendant for their own losses. For these reasons, the Court finds that the class is sufficiently numerous.

## D.    Adequacy

In order to certify a class, a court must also find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy of

representation inquiry has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 800 (3d Cir. 1995); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 962 F. Supp. 450, 519 (D.N.J. 1997) ("There are two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class.").

### i.     Adequacy of Proposed Class Representatives

Plaintiffs Katz and Mesa argue that they are adequate class representatives because their individual interests and the legal theories they assert "are identical to the interests and legal theories of class members." (Cert. Br. at 20). The Court agrees. Plaintiffs Katz and Mesa, like all class members, lived in the River Building at the time of the fire and were displaced for four days, lost access to Russell Building amenities, and returned home to water damage and the lingering smell of smoke. "A named plaintiff is 'adequate' if [her] interests do not conflict with those of the class." *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 844 (D.N.J. 2018). For the following reasons, the Court finds no such conflict here.

Defendant first argues that Plaintiffs Katz and Mesa are inadequate class representatives because they abandoned certain claims at the beginning of this litigation and are not seeking certification of all of their claims.[2] (Opp. Br. at 24–25). In particular, Defendant argues that Plaintiffs' decision to abandon their claim for negligent infliction of emotional distress creates a

---

[2] Plaintiffs point out that it was, in fact, lead counsel on the consolidated *DeMarco* matter who decided to abandon certain claims, not Plaintiffs' counsel. (ECF No. 105 at 14–15).

conflict with class members. (Opp. Br. at 25–26). Defendant maintains that "class representatives are not seeking to recover damages for emotional distress as their claim for negligent infliction of emotional distress has since been discarded," and therefore, class "members would be barred from pursuing claims for emotional distress." (Opp. Br. at 26). Defendant conflates negligent infliction of emotional distress as a cause of action with pain and suffering or emotional harm as a form of damages. Plaintiffs may have abandoned the former, but they have not abandoned the latter, and class members may still seek to recover damages for emotional harm under one or more of the class's remaining theories of liability. Plaintiffs have otherwise sufficiently explained their abandonment of claims for design defect, failure to warn, public nuisance, and breach of warranty of habitability as the outcome of strategic decision-making concerning the merits of those claims. (ECF No. 105 at 19–20). The Court therefore concludes that the abandonment of those claims does not create a conflict between Plaintiffs Katz and Mesa and other class members such that adequacy would be defeated.

Second, Defendant argues that occupants, as "individuals living in the River Building that were not signatories to the leases[,] would be unable to maintain a breach of contract claim" against Defendant, thereby creating a conflict between occupants and tenants. (Opp. Br. at 27). Defendant is correct that the tenant subgroup and occupant subgroup are positioned somewhat differently to pursue claims for breach of contract against Defendant, in that occupants—though identified on the operative lease agreements—may not be signatories to those agreements. (*See* ECF No. 103-3, Ex. H). However, "[t]he mere fact that a representative plaintiff stands in a different factual posture is not sufficient to refuse certification . . . [t]he atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy." *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, No. 02-6030, 2006 WL 891362, at *8 (D.N.J. Apr. 4,

2006) (quoting *Hedges Enters., Inc. v. Continental Grp. Inc.*, 81 F.R.D. 461, 466 (E.D. Pa. 1979));

*see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) ("[T]he

existence of minor [intra-class] conflicts alone will not defeat a party's claim to class certification:

the conflict must be a 'fundamental' one going to the specific issues in controversy.") (quoting

*Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). A conflict

"fundamental" enough to defeat adequacy of representation exists where "some [class] members

claim to have been harmed by the same conduct that benefitted other members of the class," or

where temporal differences in class members' injuries would give subgroups "different incentives

in negotiating settlement." *Dewey*, 631 F.3d at 183–84 (quoting *Valley Drug Co.*, 350 F.3d at

1189).

The Court does not find that the possibility that the occupant and tenant subgroups may

rely on different theories of contractual liability rises to the level of a fundamental conflict that

would disrupt the alignment of interests between the named Plaintiffs and class members. *See*

*Dewey*, 681 F.3d at 183 ("[T]he linchpin of the adequacy requirement is the alignment of interests

and incentives between representative plaintiffs and the rest of the class."); *In re Merck*, 2013 WL

396117, at *10 (finding class representatives adequate where their interests were not "antagonistic

to those of the absent class members"). Here, tenants share the same interest as occupants: proving

a series of events that connects Defendant's conduct to the gravity of the fire and to class members'

subsequent losses, including that elements of that conduct violated the terms of the operative lease

agreements. *See Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 844–45 (D.N.J. 2015) (finding

adequacy element satisfied where the named plaintiffs had "the same interest as the class members

in establishing" several common elements of liability); *In re Bulk*, 2006 WL 891362, at *8 (finding

adequacy of representation satisfied where the purported conflict between class members was not

"apparent, imminent, [or] so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation"). The purported conflict here does not create antagonism between the subgroups; a finding that occupants may assert breach of contract claims against Defendant does not harm the interests of tenants, and tenants have no incentive to argue that occupants' breach of contract claims should fail. The Court is therefore satisfied that no fundamental conflict exists that would prevent Plaintiffs Katz and Mesa from advocating vigorously on behalf of all class members on all claims.

Having determined that these two tenants can fairly and adequately represent the interests of a class of tenants and occupants, the Court finds no other reason to conclude that Plaintiffs Katz and Mesa do not have "the ability and the incentive to represent the claims of the class vigorously." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010). The proposed class representatives are therefore adequate for purposes of Rule 23(a)(4).

### ii.    Adequacy of Class Counsel

Defendant objects to the adequacy of class counsel, arguing that counsel has limited experience litigating class actions. (Opp. Br. at 23–24). Courts determine the adequacy of class counsel according to the following factors: "(1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class." *In re Cmty. Bank*, 622 F.3d at 292 (quoting Fed. R. Civ. P. 23(g)(1)(A) (quotation marks omitted)).

The Court finds that Class Counsel—Ralph P. Ferrara, Aaron L. Peskin, and Joshua H. Beisler of Ferrara Law Group PC—are adequate. With respect to the first and second factors,

counsel has represented Plaintiffs since the outset of this litigation, which has been ongoing for over three years, including through discovery. Counsel have decades of experience practicing complex litigation and are currently counsel of record on two additional class actions. (ECF No. 105 at 14). As to the third factor, Plaintiffs bring three tort and contract class claims under New Jersey common law; the Court has no concerns that the applicable law requires such specialized knowledge that it is beyond counsel's abilities to litigate Plaintiffs' claims. Finally, counsel has already invested considerable time and resources litigating these claims, and the Court is confident in counsel's capacity and willingness to continue doing so. The Court is therefore satisfied that class counsel is well-equipped to litigate a case of this size and complexity.

For these reasons, the Court concludes that the Rule 23(a)(4) adequacy requirement is met.


## E.    Typicality

In evaluating the typicality requirement of Rule 23(a)(3), a court considers "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (quoting *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 55 (3d Cir. 1994)). In that sense, "the typicality and adequacy inquiries often 'tend[] to merge' because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* at 296 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

Defendant argues that Plaintiffs fail to satisfy the typicality requirement because "the claims advanced by Katz and Mesa are entirely distinct from the class." (Opp. Br. at 42). This is so, Defendant asserts, because Plaintiff Mesa allegedly owes Defendant an outstanding payment,

16

which is "not typical of the proposed putative class," some of whom "were not even responsible for any rent or . . . moved out immediately after the fire." (Opp. Br. at 42). The Court disagrees. Plaintiff Mesa's alleged outstanding payment does not provide Defendant with a "unique defense" against Plaintiff Mesa's claims for negligence, nuisance, and breach of contract, though it may ultimately mitigate Plaintiff Mesa's damages or give rise to a counterclaim. *Beck*, 457 F.3d at 296 (noting that "whether a unique defense should defeat class certification" is relevant to the typicality analysis). In other words, the alleged outstanding payment for damage to Plaintiff Mesa's unit is a detail that, while potentially relevant at a later stage, has no bearing on the Court's class certification inquiry. *See id.* ("[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."). Therefore, having determined above that the interests of Plaintiffs Katz and Mesa are sufficiently aligned with those of the class for purposes of the adequacy element, the Court reaches the same conclusion with respect to typicality. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (noting that typicality is "akin to adequacy of representation" because "both look to the potential for conflicts in the class.").

## F.    Commonality

Rule 23(a)'s "commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal*, 43 F.3d at 56. "[C]ommonality is satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011) (quoting *Wal–Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met[.]" *N.J. Thoroughbred*

*Horsemen's Ass'n, Inc. v. Alpen House U.L.C.*, No. 08-613, 2012 WL 893092, at *2 (D.N.J. Mar. 14, 2012) (quoting *Baby Neal*, 43 F.3d at 56).

Plaintiffs easily satisfy the commonality requirement here. Several issues are critical to the class as a whole, including, as Plaintiffs point out, "the central issue[s]" of whether Defendant's conduct was negligent and "whether [Defendant's] negligence caused the fire[.]" (Cert Br. at 19). Class actions involving mass torts (such as fires), where a defendant's allegedly negligent conduct is central to the liability inquiry, routinely satisfy the commonality requirement. *See Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 511 (D.N.D. 2005) ("Several courts have found the commonality requirement of Rule 23(a) is satisfied in mass accident cases where class members share liability issues," and collecting cases); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 174 (E.D. Pa. 1997) (finding commonality element satisfied in products liability class settlement and noting that in "mass tort actions, the commonality requirement has been satisfied by the existence of a single central issue."). For these reasons, the Court concludes that Plaintiffs meet the commonality requirement in this case.

### G. Predominance

The predominance element of Rule 23(b)(3) is closely related to the commonality element of Rule 23(a). Rule 23(b)(3) requires a district court to find that the "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "Whereas 'Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other,' the Rule 23(b)(3) predominance element 'requires that common issues predominate over issues affecting only individual class members.'" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266

(quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527–28 (3d Cir. 2004)). In examining predominance, the court must "undertake a 'rigorous analysis,'" the purpose of which is to determine whether class-wide issues outweigh individual issues. *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 319 (3d Cir. 2016) (quoting *Wal–Mart*, 564 U.S. at 351). Unlike commonality, "[p]redominance turns on the 'nature of the evidence' and whether 'proof of the essential elements of the cause of action requires individual treatment.'" *Id.* (quoting *In re Hydrogen Peroxide*, 552 F.3d at 311).

The Court finds that Plaintiffs satisfy the predominance requirement here. Common questions lie at the heart of this case and far outweigh questions affecting individual class members. The focus of the Court's liability inquiry in this case will be on Defendant's role in starting and exacerbating the fire as well as Defendant's response to the fire—questions of fact which are common to all class members. Therefore, common questions predominate over individual questions. *See Reyes v. Netdeposit,* LLC, 802 F.3d 469, 489 (3d Cir. 2015) ("[T]he focus [of the predominance inquiry] is on whether the defendant's conduct was common as to all of the class members[.]") (quoting *Sullivan*, 667 F.3d at 299); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005) ("[I]n cases where it is alleged that the defendant . . . engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements.").

Defendant maintains that, because Plaintiffs must ultimately prove damages in order to prevail on their claims, questions about individual class members' losses will necessarily predominate over questions common to the class. (Opp. Br. at 29–30). The Court disagrees. As an initial matter, Courts routinely certify classes where individual damages inquiries may be necessary following a finding of liability. *See, e.g.*, *Holmes v. Pension Plan of Bethlehem Steel*

*Corp.*, 213 F.3d 124, 137 (3d Cir. 2000) ("[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate.") (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977)); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995) ("Because separate proceedings can, if necessary, be held on individualized issues such as damages . . . such individual questions do not ordinarily preclude the use of the class action device."); *see also* 1 *McLaughlin on Class Actions* § 4:19 (12th ed. 2015) ("The overwhelming majority of cases addressing the effect of variations in the amount of damages recoverable by class members on the certification analysis have concluded that if there is a sufficient nucleus of common questions concerning liability, the fact that damages will need to be calculated on an individual basis does not . . . bar class certification.").

Defendant seeks to persuade the Court that individual issues predominate with a long list of potential intricacies relating to individual class members' damages calculations, such as relative degrees of lost wages, hotel expenses, and moving expenses. (Opp. Br. at 32–37). Defendant is correct that, in order to succeed in proving Defendant's liability, Plaintiffs must prove that they suffered some damage that proximately resulted from Defendant's conduct. However, contrary to Defendant's assertions, Plaintiffs do not need to demonstrate intricate records of individual damages at the liability stage. *See Smith v. Suprema Specialties, Inc.*, No. 02-168, 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007) (certifying securities fraud class where common questions of fact predominated over "divergent individual issues of damages" and noting that "[t]he focus of the predominance inquiry is on liability, not damages"). Furthermore, all class members suffered at least one common harm—a four-day eviction from their homes in the River Building. At the very least, then, the following questions are common to the class: whether Defendant's conduct

with respect to the construction of the Avalon complex and the ignition and spread of the fire was (i) negligent, and (ii) proximately caused (iii) damage to Plaintiffs. Plaintiffs will be able to prove (iii) damages on a class-wide basis by showing that the fire proximately caused the four-day evacuation. Defendants are correct that the extent of individual losses caused by or following this initial harm may require an individualized damages inquiry, but the Court has already explained why that fact does not preclude class certification.[3] For these reasons, the Court concludes that Plaintiffs satisfy the requirement that common questions predominate.

## H. Superiority

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making its superiority determination, the Court considers four nonexclusive factors: "(1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 522 (D.N.J. 1997). "[T]he superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of

---

[3] "[C]ourts have many options for dealing with individual damages issues including[:] '(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.'" *Bayshore Ford Truck v. Ford Motor Co.*, No. 99-741, 2010 WL 415329, at *13 (D.N.J. Jan. 29, 2010) (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). Furthermore, Plaintiffs offer a number of "objective formula[s]" for efficient calculation of damages in several categories Defendant lists. (ECF No. 105 at 25–26).

adjudication.'" *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 99 (D.N.J. 2018) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)).

Considering these factors, this Court concludes that a class action is the superior form of adjudication. First, it is not apparent that individual class members will have an interest in individual control over the prosecution of these claims, as "no River [Building] apartments have brought their own individual cases, likely because the damages for each class member do no[t] warrant individual action." (Cert. Br. at 27). To the extent that individual class members do have such an interest, they will be permitted to opt out of the class, as it will be certified under Rule 23(b)(3). *See* Fed. R. Civ. P. 23(c)(2)(B)(v). As to the second factor, a number of individual River Building residents have settled claims against Defendant, but the Court is aware of no ongoing litigation driven by River Building tenants or occupants. (*See* ECF No. 104-1 ¶¶ 2–11). As to the third factor, this Court has a clear interest in providing a forum for New Jersey residents to recover for losses sustained as a result of a building fire in this State. Moreover, the predominance of common questions over individual issues further contributes to the Court's finding that a class action is the most efficient mechanism for adjudicating these claims. If every class member were to bring an individual action, each plaintiff would be required to demonstrate, *inter alia*, that Defendant's conduct with respect to the construction and maintenance of the Avalon complex was negligent and that Defendant's negligent conduct proximately caused the fire or caused it to spread. The Court would be required to engage in over 150 nearly identical inquiries concerning one event.

Finally, the Court notes that tenants and occupants of the Russell Building have already pursued collective action and ultimately reached a class-wide settlement with Defendant, which was approved by this Court without objection from Defendant. The Court sees no reason to prohibit tenants and occupants of the River Building from pursuing their claims in the same way.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to certify a class pursuant to Rule 23(b)(3).  An appropriate order accompanies this Opinion.

DATED: October 24th, 2018

HON. JOSE L. LINARES
Chief Judge, United States District Court